UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                         DECISION and ORDER


vs.                                                              20-CR-6097-CJS-MJP-1
                                                                23-CV-6134- CJS
PETER R. KIWITT,
                              Defendant.

_____


INTRODUCTION

Now before the Court is a motion (ECF No. 107) by Peter Kiwitt ("Kiwitt" or

"Defendant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

The application is denied.

BACKGROUND

The reader is presumed to be familiar with the history of this action as briefly set

forth below.

On January 29, 2021, a federal grand jury for the Western District of New
York returned a six-count Superseding Indictment [against the defendant]
that allege[d] the following violations: one count of Sex Trafficking of a Minor
in violation of Title 18 U.S.C. §§ 1591(a) and 1591(b)(2); two counts of Sex
Trafficking by Coercion in violation of Title 18 U.S.C. §§ 1591(a) and
1591(b)(1); one count of Sexual Enticement of a Minor in violation of Title
18 U.S.C. § 2422(b); one count of Possession of Child Pornography in
violation in of Title 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2); and one
count of Enhanced Penalty for Registered Sex Offenders in violation of Title
18 U.S.C. § 2260A. On August 2[4], 2021, the defendant entered a plea of
guilty to a violation of Title 18, United States Code, Sections 1591(a),

1

1591(b)(1) (Sex Trafficking by Force). Based upon his plea, the defendant faced a mandatory minimum sentence of 15 years. A sentencing proceeding commenced on February 7, 2022, before this Court, where the petitioner was sentenced to [the mandatory minimum] term of 180 months imprisonment. Kiwitt did not file a Notice of Appeal.

Govt. Motion to Dismiss, ECF No. 88 at pp. 1-2.

The aforementioned plea was reached pursuant to a written plea agreement, and before pleading, Defendant and his attorney, Lawrence Kasperek ("Kasperek"), had filed several motions including a pretrial ominibus motion (ECF No. 54) requesting *inter alia* dismissal and suppression of evidence; a supplemental motion to dismiss (ECF No. 61); and a supplemental motion for a *Franks* hearing.  The applications all essentially involved the same group of allegations.  First, Defendant alleged that Christopher Toscano ("Toscano"), a Monroe County Sheriff's Deputy who was cross-designated as a task officer with the Federal Bureau of Investigation ("FBI"), committed outrageous conduct by submitting false search warrant affidavits that resulted in the issuance of warrants and the discovery of digital chats between Defendant and the victim prostitutes.  The alleged falsities by Toscano in the affidavits included a statement that an incident that had occurred in July 2018 had occurred in December 2018, and statements that certain sex-trafficking victims had made incriminating statements about Defendant.[1]  Defendant asserted that Toscano intentionally included the falsehoods in order to manufacture federal jurisdiction for what was really just a state-law crime at most, so as to exploit differences between state and federal law.  *See, e.g.*, ECF No. 54 at pp. 12-13, 14-16;

---

[1] *See also*, ECF No. 66-1 at p. 14 ("Toscano committed the aforementioned fraud, moving a stalled investigation forward by turning an unrelated overdose, a July 2019 police stop at Wegmans, and two exculpatory responses from H.B. into two implied overdoses with connections to prostitution and Defendant, an implied December traffic stop, and two accusations of forced prostitution, and thereby obtained a surprisingly broad [search warrant] seeking the Facebook accounts of five individuals[].").

2

*see also*, ECF No. 61-1 at 2; ECF No. 66-1 (Detailing the alleged false statements by Toscano).

The pretrial motions further alleged that Defendant's prosecution in federal court was unconstitutional for a variety of reasons, including that the prosecution resulted from a violation of his Fourth Amendment rights by Toscano; that the prosecution violated his right to be free from double jeopardy; that the enactment of 18 U.S.C. § 1591 exceeded Congress's power under the Commerce Clause; that the prosecution violated and "inverted" federalism; that the prosecution violated the Tenth Amendment; that the prosecution violated Defendant's due process rights; that Defendant's use of cell phone and internet communications across state lines was insufficient to confer federal jurisdiction; that § 1591 was void for vagueness; that § 1591 was not intended to apply to domestic sex trafficking crimes; and that Defendant did not have sufficient notice that he could be prosecuted federally for engaging in a local crime. The pretrial motions were supported by affirmations from Kasperek, supplemented by submissions drafted by Defendant. *See, e.g.*, ECF No. 61-1, ECF No. 66-1.

On June 14, 2021, the Honorable Mark W. Pedersen, United States Magistrate Judge ("Judge Pedersen"), heard oral argument on the pretrial motions. During oral argument, Defendant, against Kasperek's advice, read a lengthy statement essentially reiterating his belief that Toscano had lied in order to frame him for a federal crime, and that the Court lacked federal jurisdiction. *See*, Hearing Transcript, ECF No. 111 at pp. 37-45. Judge Pedersen reserved on his ruling.

However, prior to a ruling by Judge Pedersen, on August 24, 2021, Defendant, and Kasperek, along with the Government, appeared before this Court and executed the

3

subject Plea Agreement, ECF No. 68.  The Plea Agreement expressly indicated that Defendant was pleading guilty to "a violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(1) (*sex trafficking by force*)." (emphasis added).  More specifically, the Plea Agreement indicated that Defendant would plead guilty to a single count of the six-count superseding indictment, Count 5, and that the Government would move to dismiss the remaining counts.

The Plea Agreement further set forth the factual basis of the charge, including the basis for finding that Defendant committed sex trafficking "by force," and the basis for federal subject-matter jurisdiction, stating:

> The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:
>
> In or about and between June 2018 and January 2019, the defendant, PETER KIWITT, in the Western District of New York, maintained, provided and advertised the victim, S.B.,[2] to engage in commercial sex acts with others.  During the relevant time, KIWITT knew S.B. was addicted to heroin and used her addiction to coerce and manipulate her to engage in commercial sex acts with others.  Specifically, KIWITT supplied S.B. with heroin and would obtain clients for S.B. to engage in commercial sex acts with.  KIWITT would then keep some of the proceeds and then use other portions of the proceeds to buy heroin and give it to S.B.  KIWITT further admits that he also supplied S.B. with heroin in order to personally engage in a sexual relationship with her.  KIWITT admits and agrees that he knew S.B. engaged in the commercial sex acts in order to obtain more heroin from the defendant.
>
> KIWITT agrees that using S.B.'s drug addiction to manipulate and compel her participation in commercial sex acts constitutes coercion under federal law.

---

[2] Count 5 pertained just to victim S.B.  Several other counts of the indictment pertained to a different, minor, victim, H.B.

4

> KIWITT secured clients for S.B. to engage in commercial sex acts through the website "skipthegames.com," which is an online dating website. The defendant KIWITT agrees that, "skipthegames.com" servers are located outside of the State of New York and therefore the posts made on the site by KIWITT travelled in interstate commerce.
>
> KIWITT also discussed the scheduling of commercial sex acts with S.B. over Facebook.com messenger, which is an international website with servers located in California. The defendant agrees that communications between KIWITT and S.B. regarding the scheduling of commercial sex acts therefore travelled in interstate commerce.

ECF No. 68 at p. 4.

The Plea Agreement, made pursuant to Fed. R. Crim. P. 11(c)(1)(C), further agreed that the parties would ask the Court to impose a sentence including a 180-month term of imprisonment, the mandatory minimum for Count 5. The Plea Agreement also contained an appeal/collateral attack waiver provision, in which Defendant agreed to waive his right to appeal or collaterally attack any component of a sentence of imprisonment of 180 months or less. *Id*. at p. 8.[3]

During a Plea Hearing on August 24, 2021, the Court began by asking Defendant whether it was his intention to "to plead guilty to Count 1 of the indictment [charging him with] sex trafficking by force," to which Defendant replied, "Yes, sir." ECF No. 93

---

[3] *See, id*. at ¶ ¶ 19-20 ("19. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of defendant's sentence. 20. The defendant understands that by agreeing not to collaterally attack the sentencing, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.").

at p. 2.  The Court then placed Defendant under oath, and, after some preliminary questioning, asked him a series of questions concerning the representation provided to him by Mr. Kasperek.  In response to such questioning, Defendant indicated that he had both read the Plea Agreement himself and reviewed the entire Plea Agreement with Kasperek; that Kasperek had answered any questions that he had about the Plea Agreement; that he had had sufficient time to discuss the matter with Kasperek before deciding to plead guilty; and that he was satisfied with Kasperek's advice and representation. ECF No. 93 at pp. 5-6.

The Court then reviewed the provisions of the Plea Agreement relating to the calculation of his sentence under the advisory Sentencing Guidelines, and how, in this case, the guideline range worked out to the statutory mandatory minimum of 180 months or fifteen years, and Defendant indicated that he understood the calculation. *Id*. at 15-17.  Defendant further indicated that he understood that, in the Plea Agreement, he was both recommending that the Court sentence him to 180 months in prison and waiving the right to appeal or collaterally attack any sentence at or below that amount. *Id*. at 18-19.

Defendant additionally indicated that he was signing the Plea Agreement of his own free will, and that he understood he did not have to plead guilty, and that he could instead proceed to a jury trial if he wanted, where the Government would have to prove his guilt beyond a reasonable doubt, including that he committed the act of sex trafficking by force. *Id*. at 22-25.  Defendant also indicated that no one was threatening him or forcing him to plead guilty, and that he believed that pleading guilty was what was best for him to do. *Id*. at 27.

Finally, the Court asked Defendant whether he agreed to the factual basis for the plea, in the following colloquy:

THE COURT: Before I can accept your plea of guilty, then, Mr. Kiwitt, you're going to have to tell me what you did. And in that regard, I'm going to direct your attention to Page 4, Paragraph 7 [of the Plea Agreement] where it is stated that you and the government agree to the following facts: Subparagraph A: That in or about and between June 2018, and January 2019, here in the Western District of New York, that you maintained, provided, and advertised the victim S.B. to engage in commercial sex acts with others; is that true?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is it true that during this time period that you knew S.B. was addicted to heroin; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Is it also correct that you used her addiction to coerce; that is, to compel her and manipulate her to engage in commercial sex acts with others; is that true?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is it also true that you would keep some of the proceeds and then use other portions of the proceeds to buy heroin to give to S.B.; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is it also true that you supplied S.B. with heroin in order to personally engage in a sexual relationship with her?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you admit that you knew S.B. engaged in commercial sex acts in order to obtain heroin from you, is that true?

THE DEFENDANT: Yes, your Honor.

THE COURT: Subparagraph B, do you agree that using S.B.'s drug addiction to manipulate and compel here participation in commercial sex acts constitutes coercion under federal law?

THE DEFENDANT: Yes, your Honor.

THE COURT: Subparagraph C.   Is it true that you secured clients for S.B. to engage in commercial sex acts through the website skipthegames.com, which is an online dating website, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you agree that the skipthegames.com servers are located outside the State of New York; do you agree with that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And here's why that's important. You remember that one of the elements is: Involves interstate commerce. That's what provides some federal jurisdiction. If the case went to trial, I presume, [AUSA] Ms. Marangola, you would bring on expert testimony to establish that the skipthegames.com servers are, in fact, located out of the State of New York?

MR. MARANGOLA: Yes, Judge.

THE COURT: And you don't dispute that at all, do you, Mr. Kiwitt?

THE DEFENDANT: No, sir.

THE COURT: Accordingly, it impacted interstate commerce; do you understand?

THE DEFENDANT: Yes, I understand.

THE COURT: Subparagraph D. Did you also discuss the scheduling of commercial sex acts with S.B. over facebook.com; is that true?

THE DEFENDANT: Yes, your Honor.

THE COURT: And, Ms. Marangola, if you went to trial, you'd establish that that's an international website located in California; is that correct?

MR. MARANGOLA: Yes, Judge.

THE COURT: And you don't dispute that, do you, Mr. Kiwitt?

THE DEFENDANT: No, your Honor.

THE COURT: And, again, that would establish the interstate nexus; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, you knew this was wrong to do, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: In any event, the Court does find, based on Mr. Kiwitt's acknowledgement of the allegations contained in Paragraph 7, that a factual basis does exist for his plea of guilty and the Court will accept it. I'm now going to ask you, Mr. Kiwitt, how, in Mr. Kasperek's presence, you plead to a violation of Title 18 of the United States Code, Section 1591(a) and 1591(b)(1), sex trafficking by force, how do you now plead: Guilty or not guilty?

THE [DEFENDANT]: Guilty, your Honor.

ECF No. 93 at 27-31.

On January 13, 2022, Kasperek filed a Statement of Defendant with Respect to Sentencing Factors (ECF No. 76), urging the Court to accept the 11(c)(1)(C) Plea Agreement. In it, Kasperek asserted that Defendant continued to maintain his guilt, even though he also continued to believe, as discussed earlier, that Toscano had "manipulated" evidence in the case. *See, id*. at p. 4 ("Peter accepts full responsibility for his actions and his plea and collo[quy] before this Court demonstrate that. He does not shrink from his

9

belief however that Case Agent Toscano manipulated information which has been presented in the PSR."). Kasperek added:

> Peter Kiwitt is an intelligent gifted individual, struggling with his spiral into the abyss. He concedes his criminal responsibility, but rationalizes his behavior was a means to accomplish his pursuit to rescue S.B. from a more violent and dangerous pimp. He recognizes his means however only served to promote the victimization of S.B.

*Id*. at p. 5.

Attached to Kasperek's statement was a 3-page typed statement from Defendant entitled "Acceptance of Responsibility," that began: "I accept responsibility for my actions and, because I tried to impact them, S.B.'s actions. There are no excuses." Defendant went on to explain how in 2018 he made a "terrible decision" to become involved in S.B.'s prostitution activities, by "helping find supplemental clients" for her, *id*. at 3, purportedly to rescue her from a violent pimp name Jake, *id*. at 1. Defendant added that, "[M]y crimes were late, stress-driven anomalies in an otherwise good and lawful life." *Id*. at 3.

On February 7, 2022, the Court accepted the 11(c)(1)(C) Plea Agreement and sentenced Defendant, who had two prior state-court felony convictions, for Possessing a Sexual Performance by a Child Less than Sixteen and Sex Offender Failure to Report Change of Address/Status, respectively, principally to the agreed-upon mandatory-minimum sentence of 180 months in prison, followed by a 15-year term of supervised release. Defendant did not appeal.

On February 24, 2023, Defendant filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 86). On March 8, 2023, the Government filed a motion to dismiss the motion on the grounds that it grossly violated the Court's Local Rules of Civil Procedure concerning page limits.

On August 25, 2025, the Court issued a Decision and Order, ECF No. 104, striking most of Defendant's motion, as violating both the instructions for AO 243 and Local Rule of Civil Procedure 7(a)(2)(C), since, for example, it exceeded the Court's Local Rule on page limits by 184 pages, without the Court's permission.  The Court left intact Defendant's 6-page form petition, ECF No. 86, "with leave for Defendant to submit a single, new memorandum of law that will not exceed thirty-five (30) pages in length total, including any statement of facts and legal argument," within 90 days. ECF No. 104.

On November 6, 2025, Defendant filed an entirely new § 2255 motion, ECF No. 105, consisting of a new 6-page form petition, a 7-page addendum, and a 28-page memorandum of law.  Since it was obviously Defendant's intent to have this filing replace his prior motion, ECF No. 86, the Court deems ECF No. 86 to be superseded.

On November 7, 2025, the Court issued a Scheduling Order, ECF No. 106, directing the Government to file its response by January 9, 2026, and directing Defendant to file any reply by 45 days thereafter.

On November 17, 2025, (and without the Court's permission), Defendant filed a new version of his § 2255 motion (ECF No. 107) that is purportedly edited and revised in unspecified respects.  On its face, the filing appears largely identical to ECF No. 105, except that the addendum to the form motion is now 8 pages long rather than 7.  Since the Government has not objected, the Court deems ECF No. 107 to now be the operative § 2255 motion.

The *pro se* motion (ECF No. 107) purports to state two claims: "Lack of Constitutional Jurisdiction" and "Lack of Constitutionally Effective Counsel."   In support thereof, Defendant now insists that he never coerced S.B. into performing commercial

sex acts,[4] and that any evidence of him doing so was manufactured by Toscano.[5]

The motion further now contends that there was no actual federal jurisdiction to prosecute him, and that the prosecution is unconstitutional, for many of the same reasons argued in his pretrial motions, discussed earlier.  Additionally, Defendant now claims that he could not be guilty under § 1591 of using drugs to coerce SB into commercial sex trafficking, since "Congress—well aware of the coercive power of drugs—did not make drugs an element of coercion in § 1591." *Id*.  Consequently, he maintains, that his prosecution for such an offense violated his constitutional right to be free from *ex post facto* laws.  Further, he argues that § 1591 is impermissibly vague since it does not adequately define prostitution and sex trafficking.  *Id*. at 14.  Defendant also suggests that § 1591 is unconstitutional as applied to him, inasmuch as Congress only intended the statute to apply to "the worst offenders," which he claims he is not. *Id*. at 15.

The motion also contends that Kasperek provided ineffective assistance of counsel.  On this point, Defendant asserts that Kasperek did a poor job of arguing his pretrial motions, discussed earlier, and then pressured him into accepting the Government's plea offer. ECF No. 107-2 at 8-9. [6]  The motion also alleges that Kasperek failed to properly investigate the case, since he did not obtain additional evidence to corroborate Defendant's assertions about Toscano's alleged fabrications, ECF No. 107-3 at 26-27, failed to recognize the lack of federal jurisdiction, allowed Defendant to plead

---

[4] *See*, ECF No. 107-2 at p. 1 ("At no time on my part was there any force, fraud, or coercion of SB nor anyone else.").

[5] *See*, ECF No. 107-3 at p. 2 ("[Toscano] made a dozen corruptions to SB's statement – fabricating evidence that I coerced her[.]").

[6] *See, e.g.*, ECF No. 107-2 at p. 7 ("I instruct Kasperek to tell the Government that I was truthful at the proffer—there was no coercion by me of SB into any illegal acts."); *see also, id*. at p. 9 ("[Kasperek] warns me that if I decline the [plea] offer I will be forced to trial, and 'die in prison.'  Moreover he repeatedly suggests that, if I were to decline it, I find a new attorney.  . . .  With no time left, I feel forced to accept the plea offer.").

guilty to crimes of which he was innocent (since he neither forced the victim into sex trafficking nor affected interstate commerce), ECF No. 107-3 at 27, and failed to argue at sentencing that Defendant was innocent of coercion. ECF No. 107-3 at 27-28.

On January 8, 2026, the Government filed its opposition to Defendant's motions, ECF No. 108. The Government maintains that the Court should dismiss the § 2255 motion, since Defendant's jurisdictional arguments are meritless; there was ample evidence that he coerced the victim into commercial sex trafficking; and his attorney was not ineffective.

On January 27, 2026, Defendant filed a reply, ECF No. 110, in which he essentially reiterates the arguments in his initial brief.

The Court has carefully considered the parties' submissions and the entire record, and, for the reasons discussed below, denies Defendant's motion.

ANALYSIS

Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Section 2255 Principles

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "[A] collateral attack on a final judgment in a federal criminal case

13

is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citations and internal quotation marks omitted).

An Evidentiary Hearing Is Not Required

The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).   Notably, a defendant does not become entitled to an evidentiary hearing merely by making assertions that contradict his prior sworn statements to the Court:

> An evidentiary hearing is not required "when the allegations on a motion ... merely contradict the record, are inherently incredible, or are simply conclusory." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992); *see also Brown v. United States*, 637 F.Supp.2d 212, 23 (S.D.N.Y.2009 (collecting cases) ("[The movant]'s claims of ineffective assistance of counsel in connection with his guilty plea are conclusory, contradicted by the record, unsupported by evidence and therefore are merit less."); *Chen v. United States*, Nos. 06 Civ. 7159, 02 Cr. 1039, 2007 WL 4358466, at *3 (S.D.N.Y. Dec. 7, 2007) (" '[I]n the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary [and] he had discussed the plea with directly contradict his more recent self-serving allegations, his ineffective assistance claim is dismissed.") (*quoting United States v. Soler*, 289 F.Supp.2d 210, 216 (D.Conn.2003), *aff'd*, 124 Fed. Appx. 62 (2d Cir.2005). If an evidentiary hearing is found to be unnecessary under this standard, the § 2255 motion may be dismissed. In evaluating the need for a hearing, "a district court on habeas review may rely on the defendant's sworn statements and hold him to them." *Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y 2004); *see also; Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations ... is subject to summary dismissal....").

14

*Pineda v. United States*, No. 10 CIV. 2385 RJH JCF, 2010 WL 6501656, at *3 (S.D.N.Y. Oct. 26, 2010), report and recommendation adopted, No. 10 CIV. 02385 RJHJCF, 2011 WL 1419615 (S.D.N.Y. Apr. 11, 2011).

Here, the Court finds that an evidentiary hearing is not required, since there are no genuine issues of fact and the record conclusively shows that Defendant is not entitled to relief.  In this regard, any claims in the § 2255 motion that might require an evidentiary hearing are primarily based on factual assertions that contradict Defendant's prior sworn statements to the Court at the Plea Hearing.[7]

For example, the motion asserts that Defendant never forced S.B. into commercial sex trafficking, and that the Court should conduct an inquiry into Toscano's alleged falsification of evidence of coercion.  However, the Court has no need for a hearing on this point, since Defendant already admitted under oath that he used S.B.'s heroin addiction to coerce her into sex trafficking.  Nor has Defendant now provided any persuasive evidence to the contrary.  Rather, Defendant relies only on his own bald and contradictory assertions of innocence; references to unsubstantiated hearsay statements from the victim prostitutes purportedly denying that he coerced S.B; and his subjective beliefs and speculation about what S.B. and the other prostitutes would or would not have said to investigators. *See, e.g.*, ECF No. 66-1 at pp. 10, 12, 14, 16.  Similarly, Defendant's bald assertion that Kasperek improperly pressured him into pleading guilty is flatly contradicted by his sworn testimony at the Plea Hearing.  Defendant's request for an

---

[7] *See, Pena v. United States*, No. 95 CR. 130 (AGS), 2000 WL 1568322, at *4 (S.D.N.Y. Oct. 20, 2000) ("Pena requests an evidentiary hearing. The Court denies this request. Statements that contradict a defendant's sworn statements at a plea allocution do not provide grounds for an evidentiary hearing. *See United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992). Absent those contradictions of Pena's sworn statements, the motion does not present any facts that, if true, would provide grounds for relief. The motion, files and records in this case conclusively show that petitioner is entitled to no relief; accordingly, an evidentiary hearing is not warranted. See 28 U.S.C. 2255.").

evidentiary hearing is therefore denied.

<u>Defendant's Claims Are Not Barred by the Plea Agreement's Waiver</u>

Defendant contends that he was improperly convicted since, for example, he did not traffic the victim, S.B., by force or coercion. Defendant does not argue that if he was properly convicted, there would be anything improper about his sentence of 180 months of imprisonment, the statutory mandatory minimum. Therefore, liberally construing Defendant's papers, the Court understands that he is challenging his conviction, not his sentence.

As discussed earlier, the Plea Agreement contains a provision in which Defendant broadly waived his right to appeal or collaterally attack any aspect of a sentence of 180 months or less. The waiver expressly refers only to Defendant's right to appeal or collaterally attack his sentence, but says nothing about his right to challenge his conviction. At least one court in this district has held that such a waiver does not waive the defendant's right to challenge his conviction.[8] Moreover, the Government's opposition papers do not mention the Plea Agreement's waiver provision. *See*, Govt's Motion to Dismiss, ECF No. 108. Accordingly, the Court finds that Defendant's challenges to his conviction are not barred by the Plea Agreement's appeal/collateral attack waiver.[9]

---

[8] *See, Perez v. United States*, No. 6:18-CR-06025 EAW, 2025 WL 2062562, at *9 (W.D.N.Y. July 22, 2025) ("[T]he Court concludes that the collateral attack waiver included in Petitioners' plea agreements—which states specifically that they waive their right to appeal and collaterally attack any component of a sentence imposed by the Court that falls within or is less than the sentencing range for imprisonment—does not preclude them from challenging the validity of their convictions under 18 U.S.C. § 924(c).") (footnote omitted).

[9] Defendant apparently thinks the waiver applies generally, but not to claims involving jurisdiction or ineffective assistance of counsel. *See, Def. Memo of Law*, ECF No. 107-3 ("Neither Ground One's jurisdiction nor Ground Two's ineffective assistance of counsel are subject to waiver.") (citations omitted).

Defendant's Claim of Ineffective Assistance of Counsel
in Connection with the Plea Lacks Merit

Even assuming *arguendo* that the Plea Agreement's waiver provision did not waive Defendant's right to collaterally attack his conviction, it is clear that a knowing, voluntary and unconditional guilty plea waives all non-jurisdictional defects in a conviction. *See*, *United States v. Cubangbang*, No. 22-2578, 2024 WL 725880, at *2 (2d Cir. Feb. 22, 2024) ("A defendant who enters a knowing and voluntary guilty plea waives all non-jurisdictional defects. *United States v. Calderon*, 243 F.3d 587, 590 (2d Cir. 2001)."); *see also, United States v. Mladen*, 958 F.3d 156, 162 (2d Cir. 2020) ("[I]t is well established that a defendant who has entered an unconditional plea of guilty has admitted his guilt and has waived his right to raise any nonjurisdictional issues.") (collecting cases).

Here, Defendant seems to now dispute that his plea was voluntary, knowing, and intelligent.  That is, liberally construing Defendant's motion, he contends that his plea was not voluntary, knowing, or intelligent, since Kasperek provided ineffective assistance of counsel.  Defendant's motion expressly alleges three instances of alleged ineffective assistance of counsel: 1) a failure by Kasperek to conduct an appropriate pre-plea investigation;[10] 2) a failure by Kasperek to realize "that the required federal jurisdictional element of coercion was absent"; and 3) a failure by Kasperek at sentencing to argue that Defendant never coerced the victim. ECF No. 107-3 at pp. 26-28.

However, the body of Defendant's motion arguably makes references to additional alleged errors and/or misconduct by Kasperek, and, consequently, the Court liberally construes Defendant's papers to allege that Kasperek's representation was deficient in

---

[10] Defendant seemingly asserts in passing that his original attorney, Mr. DeCarolis, also failed to properly investigate the case, but he has not supported that claim and the Court in any event finds that any such failure by DeCarolis did not impact on the knowing and voluntary nature of Defendant's plea.

17

the following respects: 1) he failed to properly investigate Toscano's alleged misconduct; 2) he did a poor job of articulating Defendant's claims at oral argument on the pretrial motions;  3) he incorrectly advised Defendant to plead guilty, since jurisdiction was lacking;  4) he incorrectly advised Defendant to plead guilty since § 1591 is unconstitutional on its face and as applied to Defendant; 5) he incorrectly advised Defendant to plead guilty since the Government could not prove either that Defendant coerced the victim or that Defendant's communications on skipthegames.com and Facebook messenger provided an interstate nexus; 6) he pressured Defendant into accepting the plea offer; and 7) he failed to argue at sentencing that jurisdiction was lacking and that Defendant had not coerced the victim. ECF No. 107-2 at pp. 7-10; ECF No. 107-3 at pp. 26-29.

It is of course well-settled that a plea is not knowing and voluntary when it is the product of ineffective assistance of counsel:

> The Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. amend. VI. Habeas petitions that assert ineffective assistance of counsel claims are analyzed under the clearly established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a Petitioner claiming ineffective assistance of counsel in violation of the Sixth Amendment must establish that: (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 692–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.
>
> Under the first prong of the *Strickland* test, the Petitioner bears the burden of demonstrating that his counsel's errors were "so serious that counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (cleaned up).

This standard is intentionally high because ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' ... [and d]ecisions by criminal defense counsel are often choices among bad alternatives[.]" *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010). Because ineffective assistance of counsel claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial ... the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 689-90). In applying *Strickland*, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted).

Under the second prong of the *Strickland* test, a Petitioner can demonstrate prejudice by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, in determining whether a habeas Petitioner has suffered prejudice as a result of his trial counsel's allegedly unreasonable acts or omissions, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently;" rather, *Strickland* asks courts to consider whether the result would have been "reasonably likely" to have been different. *Harrington*, 562 U.S. at 111 (internal citations omitted). In other words, the "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Further, in cases of overwhelming guilt, counsel is not likely to violate *Strickland*'s prejudice prong even where clear error can be established. *Rodriguez v. New York*, No. 16-cv-5615 (JFB), 2017 WL 1655217, at *10 (E.D.N.Y. May 2, 2017) (citing *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Thus, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697.

"Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010)). "To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial."[11] *Id*. (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

*White v. United States*, No. 19-CR-277 (JSR), 2025 WL 2962617, at *3–4 (S.D.N.Y. Oct. 21, 2025), *report and recommendation adopted*, No. 19-CR-277-1 (JSR), 2026 WL 221170 (S.D.N.Y. Jan. 28, 2026).

Here, Defendant cannot make the required showing under this standard. To begin with, Defendant cannot show that Kasperek was ineffective by improperly pressuring him into accepting the Government's plea offer. Specifically, Defendant asserts that when he and Kasperek discussed the Government's plea offer, Kasperek opined that the arguments raised in the pretrial motions were not likely to succeed, and that if Defendant rejected the plea offer and went to trial, he would likely be convicted and "die in prison." Defendant further indicates that Kasperek "suggested" that if he rejected the plea offer

---

[11] In this regard, the defendant must show that he would have chosen to proceed to trial on all counts of the indictment, including any charges that were dismissed as part of the plea agreement. *See, e.g., Lombardo v. Parker,* 976 F.2d 733 (6th Cir. 1992) ("Lombardo has not shown that there is a reasonable probability that he would not have pleaded guilty, but for his counsel's alleged errors, and would have insisted on going to trial on the charges (felonious assault, murder and attempted murder) listed in the original indictment. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.), cert. denied, 484 U.S. 870 (1987)."). Kiwitt has not made any plausible showing on this point.

20

and went to trial, Kasperek would not continue to represent him.  Defendant asserts that under those circumstances, he felt pressured to accept the plea offer. ECF No. 107-2 at p. 9.  However, this contention is directly refuted by Defendant's sworn testimony at the plea hearing and therefore lacks merit. *See, e.g., Glover v. United States*, No. 11-CR-629(3) (CS), 2015 WL 11281553, at *2 (S.D.N.Y. Oct. 23, 2015) ("A federal habeas court is entitled to rely on sworn statements made during a plea allocution even in the face of a later, contrary claim.").

Defendant also cannot show that Kasperek was ineffective by failing to raise certain points on oral argument when the pretrial motions were before Magistrate Judge Pedersen.  In this regard, Defendant seems to assert that Kasperek was ineffective because, in Defendant's estimation, he did a poor job at oral argument on the pretrial motions by not offering more exhaustive oral arguments concerning the points that were already set forth in his papers.  However, in addition to the fact that this claim does not relate to the voluntariness of Defendant's plea,[12] there is no merit to the claim, since Defendant is merely second-guessing Kasperek's professional judgment, without showing that additional oral argument would have made any difference in the outcome of the motions. *See, e.g., Mercado v. Lempke*, No. 11 CIV. 6529 SAS, 2015 WL 3879636, at *4 (S.D.N.Y. June 16, 2015) ("Needless to say, however, a lawyer is not obliged to raise every conceivable argument that supports her client's position. This is especially so in the context of frivolous arguments, but it also holds true in the context of nonfrivolous

---

[12] *See, e.g., Hickman v. Bell*, No. 21 CIV. 4405 (RA) (SLC), 2024 WL 5715305, at *10 (S.D.N.Y. Mar. 21, 2024) ("Hickman's [ineffective assistance of counsel] IAC Claim challenges Williams' representation in connection with the Suppression Motion and the Hearing, which are "events prior to his guilty plea that do not impact the nature of his counsel's advice to plead guilty or the voluntariness of the plea[,]" and are therefore barred under *Tollett*.") (citation omitted).

21

arguments—even nonfrivolous arguments that are explicitly requested by defendant. Put simply, lawyers must be given latitude to exercise professional judgment.") (footnote omitted); see also, United States v. Gonzalez, No. 16-CR-6132-CJS-MWP-1, 2025 WL 3207693, at *7 (W.D.N.Y. Nov. 17, 2025) ([T]he failure to request oral argument does not necessarily establish deficient performance, and, in any event, Defendant has not made any plausible showing of prejudice, since he has not attempted to show how oral argument in this case would have resulted in a different outcome.") (collecting cases), appeal dismissed (Mar. 23, 2026).

Defendant also cannot show that Kasperek was ineffective for failing to conduct a better pre-plea investigation. In this regard, Defendant asserts that Kasperek neither spoke to S.B., the victim referenced in Count 5 of the Superseding Indictment, nor otherwise "investigated Toscano's corruptions." ECF No. 107-3 at p. 27. Defendant seems to maintain that if Kasperek had done these things, he would have discovered that Defendant was innocent[13] and would not have advised Defendant to accept the plea offer. However, this claim does not relate to the voluntariness of Defendant's plea,[14] and, in any event, Defendant has not shown that Kasperek's investigation was constitutionally deficient.

---

[13] Defendant's papers make references to innocence, but he has not actually made a showing of actual innocence. See, e.g., U.S. v. Wilbert, 609 F. Supp. 3d 209, 216 (W.D.N.Y. 2022) ("Wilbert now states that "after sentencing, it was learned that ... [he] is actually innocent." What he appears to mean by this remarkable assertion is that he now believes that the Government would not have been able to establish his guilt through admissible evidence at trial. Wilbert's reevaluation of the Government's case, in hindsight tinged with regret for his decision to plead guilty, does not amount to a claim of actual innocence. Wilbert fully and freely admitted his guilt, and he has presented nothing that casts any doubt on the veracity of that admission.").

[14] See, e.g., Sims v. Gonyea, No. 15-CV-6621(MAT), 2018 WL 1876905, at *7 (W.D.N.Y. Apr. 19, 2018) ("[P]etitioner's claims related to counsel's alleged lack of preparation and interest in fighting for petitioner do not relate to the voluntariness of the guilty plea[.]") (collecting cases holding that alleged ineffectiveness of counsel involving a failure to investigate does not affect the voluntariness of a guilty plea.).

Beginning with Kasperek's alleged failure to interview the victim, it is unclear why Defendant believes Kasperek did not speak to S.B., but even assuming he didn't, Defendant has not provided the Court with any admissible evidentiary proof to support his belief that S.B. would have provided Kasperek with exculpatory information. Instead, Defendant relies on hearsay and speculation to assert that S.B. would have said that he never coerced her into sex trafficking. However, even assuming that Defendant had shown that Kasperek's decision not to interview S.B. fell outside the bounds of reasonable professional judgment, which he has not done, he cannot show prejudice on this point,[15] since he admitted under oath to this Court that he coerced S.B. into committing commercial sex acts.

As for the second half of Defendant's "failure-to-investigate" argument, he broadly asserts that Kasperek never "investigated Toscano's corruptions." However, this contention is clearly refuted by the record, including Kasperek's Omnibus Motion and Motion for a *Franks* Hearing, both of which detailed Toscano's alleged misstatements and misconduct. Rather, at most, Defendant asserts that Kasperek failed to investigate a particular false statement by Toscano concerning a different victim, H.B., who was not involved in the count of the Superseding Indictment to which Defendant pled guilty. Concerning this alleged failure by Kasperek, Defendant states:

> As one example, just adding my cell-site location information for December 28, 2018 to the lack of messaging on that date between HB and any account alleged by the Government to have been mine (information already in the

---

[15] The applicable legal standard for demonstrating such prejudice is clear: "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Government's possession) would have shown that HB's accusation was a fraud perpetrated by law enforcement. Not only would that have undermined counts based on HB, it would have shown the Report, search warrants, Criminal Complaint, and indictments to be materially perjured— and thus impacted all counts and plea offers.

ECF No. 107-3 at p. 27. However, Kasperek included essentially this same allegation (that Toscano lied about communications between Defendant and HB on December 28, 2018) in the *Franks* Hearing Motion.[16]

Defendant's suggestion that this argument would have been stronger if Kasperek had added references to Defendant's "cell-site location" fails to demonstrate constitutionally deficient performance. *See, again, Mercado v. Lempke*, 2015 WL 3879636 at *4 "Needless to say, however, a lawyer is not obliged to raise every conceivable argument that supports her client's position. This is especially so in the context of frivolous arguments, but it also holds true in the context of nonfrivolous arguments—even nonfrivolous arguments that are explicitly requested by defendant. Put simply, lawyers must be given latitude to exercise professional judgment.") (footnote omitted).

Nor, in any event, can Defendant show prejudice from Kasperek's failure to investigate "cell-site location" information regarding communications with H.B. on December 28, 2018. In this regard, the gist of Defendant's argument is that a better investigation would have enabled Kasperek to prove that Toscano lied to the Court about various things, but primarily about Defendant coercing S.B. into committing commercial sex acts, when Toscano applied for search warrant applications. Again, however,

---

[16] *See*, ECF No. 66-1 at pp. 10, 12 ("The Government has H.B.'s texts and messages. Why are those ones not in the discovery? The answer is obvious and easily confirmed. There was no communication with Defendant on or near December 28. The narrative is fraudulent.").

24

Defendant cannot show prejudice on this point, since he admitted under oath that he forced S.B. into committing commercial sex acts, which is the very thing he accuses Toscano of lying about.[17]

In sum, Defendant cannot show either that Kasperek's investigation was deficient or that a better investigation would have produced exculpatory evidence which would have caused Kasperek to change his recommendation as to the plea offer or changed the outcome of a trial. *See, e.g., United States v. Blanco*, 811 F. App'x 696, 703 (2d Cir. 2020) ("Blanco has not shown that the outcome of the trial would have been different had trial counsel contacted and interviewed the witnesses she identifies[.]").

Defendant also has not shown that that advice he received from Kasperek concerning the decision to plead guilty fell below acceptable standards.  On this point, Defendant argues that Kasperek should have advised him not to accept the plea offer, since jurisdiction was lacking and his admitted conduct did not amount to either sex trafficking by force or conduct affecting interstate commerce, as was charged in the Superseding Indictment.  Regarding his reference to jurisdiction here, Defendant maintains that the element of force or coercion is jurisdictional.[18]

However, Defendant admitted under oath that he sex-trafficked S.B. by force or coercion, by supplying her with heroin and using her heroin addiction to coerce her into committing commercial sex acts, and such conduct is sufficient to establish sex trafficking by "means of force, threats of force, fraud, or coercion" as described in § 1591(b)(1). *See, United States v. Kimmons*, No. 19-4374-CR, 2022 WL 2344088, at *1 (2d Cir. June 29,

---

[17] *See, e.g.*, ECF No. 107-3 (Accusing Toscano of "fabricating evidence that I coerced her [S.B.], and thus establishing the missing element for federal jurisdiction.").

[18] See, e.g., ECF No. 107-3 (Asserting that Toscano "fabricat[ed] evidence that he coerced [S.B.]," thus "establishing the missing element for federal jurisdiction.").

25

2022) ("Kimmons pled guilty to one count of sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591(a) and (b)(1). The offense conduct involved Kimmons supplying heroin to women to get them addicted to the drug, then coercing the women into engaging in commercial sex acts to fund their addictions."); *see also, United States v. Bongiovanni*, No. 19CR227JLSMJR, 2023 WL 3143894, at *6 (W.D.N.Y. Apr. 28, 2023) ("[T]he Government argues it would offer evidence that Pharaoh's dancers were provided drugs to coerce them to engage in commercial sex acts, and that fear of withdrawal symptoms also played a coercive role.  The Second Circuit, and other circuit courts, have referenced the practice of providing, withholding, and threatening to withhold drugs as evidence of coercion to engage in commercial sex acts.").[19]

Similarly, Defendant admitted that he used interstate means, namely, communications through skipthegames.com and Facebook messenger, to commit the crime, which is sufficient to affect interstate commerce as required by § 1591. *See, United States v. Corley*, 679 F. App'x 1, 6 (2d Cir. 2017) ("As to this element [(Section 1591's interstate commerce clause)], the Government need offer sufficient evidence from which to infer only that Corley's actions affected interstate commerce. The evidence showed that Corley used a website, Backpage.com, to post advertisements featuring the minor victims. The parties stipulated that Backpage processed the advertisement payments in Massachusetts and hosted the advertisements on a server in Arizona. This evidence is

---

[19] *See also, United States v. Mack*, 808 F.3d 1074, 1082 (6th Cir. 2015) ("The fact that several of the victims had pre-existing drug addictions does not make Mack's actions any less coercive. Mack used those addictions to his advantage by supplying "free" drugs to the victims, which not only resulted in a high (and fictitious) drug debt, but also exacerbated their addictions. At that point, defendant carefully controlled MB, SW, and CB's access to drugs to cause them to engage in acts of prostitution[.]").

sufficient to support an inference that his actions affected interstate commerce.").

Accordingly, there is no merit to Defendant's contention that Kasperek erroneously advised him to plead guilty since the elements of coercion and interstate nexus were missing.

Nor is there merit to Defendant's assertion that Kasperek was ineffective for failing to advise him that jurisdiction was lacking and/or that 18 U.S.C. § 1591 is unconstitutional on its face or as applied. Again, in this regard, Defendant primarily relies on several of the same arguments that were contained in his pretrial motions, insofar as they relate to Count 5 of the superseding indictment and victim S.B..[20]

For example, Defendant contends that § 1591 is unconstitutional as applied to his conduct, since it involved only a traditional state crime (prostitution) which is encompassed by the New York Penal Code. Relatedly, Defendant contends that the victim, S.B., was not subject to "sex trafficking," since she was a voluntary prostitute and not a slave, and that § 1591 does not apply to "consensual local prostitution." Defendant further asserts that in his case, the use of cellular telephones and the internet is the "lynchpin" of the federal charge, and that such conduct has such an insignificant effect on interstate commerce that "the charged offense as applied to this defendant exceeds Congress's authority under the Commerce Clause." ECF No. 54 at p. 22. However, these same arguments, or variations thereof, have been roundly rejected by courts. For example, one court rejected this same argument commerce clause argument, stating:

> Defendant contends that "Congress's authority under the Commerce Clause to prohibit human trafficking ... does not reach Mr. Frey's conduct which is purely voluntary intrastate patronization of adult prostitutes...."

---

[20] Most of the arguments in Defendant's pretrial motions pertained to now-dismissed counts of the Superseding Indictment relating to the minor victim, H.B.

Gaffey Declar. (ECF 22) at 6. That statement is not convincing. As correctly noted by the government, his "conduct had a sufficient effect on interstate commerce to defeat the defendant's as applied challenge on that ground." Gov't's Letter in Opp. (ECF 25) at 9. *See, e.g., United States v. Miller*, 116 F.3d 641, 673-74 (2d Cir. 1997) (explaining the expansive scope afforded to the Commerce Clause generally); *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (explaining the broad breath of the Commerce Clause's applicability in Section 1591 cases); *United States v. Evans*, 476 F.3d 1176, 1178-79 (11th Cir. 2007) (same). Thus, for example, in *Evans*, the sex trafficking took place only in Florida but given that a cell phone was utilized to arrange dates, the alleged violation of Section 1591 resulted in a conviction "even without evidence that the calls he made were routed through an interstate system." *Id*. at 1181.

*United States v. Frey*, No. 19-CR-537 (DRH), 2021 WL 215722, at *3 (E.D.N.Y. Jan. 21, 2021).   This Court similarly finds that Defendant's "as applied" commerce clause challenge to § 1591 is meritless.  The Court also finds no merit to the claim that no "sex trafficking" occurred since S.B. was a voluntary prostitute rather than a slave, since, even assuming that S.B. sometimes voluntarily engaged in prostitution, Defendant admitted under oath that he used S.B.'s drug addiction to coerce her into committing commercial sex acts at other times. *See, e.g., U.S. v Frey*, 19-CR-537 (DRH), 2021 WL 215722 at *2 (E.D.N.Y. Jan. 21, 2021) (Rejecting argument that "sexual encounters between adult prostitutes and their customers are beyond the reach of 1591's prohibitions" where a defendant uses force or coercion against the prostitute).

There is also no merit to Defendant's assertion that 18 U.S.C. § 1591 is itself unconstitutional under any of the theories he raises, including that the statute is an invalid exercise of Congress's Commerce Clause power, or that it violates states' rights or the Tenth Amendment. *See, e.g., U.S. v. Campbell*, 111 F.Supp.3d 340 (W.D.N.Y. Jun. 22, 2015) (Considering and rejecting arguments that § 1591 is an invalid exercise of

Congress's Commerce Clause power); *see also, U.S. v. Adams*, 578 F.Supp.3d 692 (E.D. Pa. Jan. 6, 2022) (considering and rejecting argument that the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § § 1591 *et seq*. "should not apply to purely in-state conduct as a matter of criminal statutory interpretation viewed through the lens of federalism," in response to the defendant's motion " to dismiss two counts brought under the TVPA pursuant to a theory that the application of the TVPA to local prostitution is beyond the scope of the statute."), *aff'd*, 132 F.4th 259 (3d Cir. 2025); *U.S. v. Clayton*, No. 22-2908, 2024 WL 4371532, at *2 (3d Cir. Oct. 2, 2024) ("[S]ection 1591 is a valid exercise of Congress's commerce clause power, and the statute is constitutional as applied to Clayton's domestic conduct, which included transporting minors across state lines."), *cert. denied*, 145 S. Ct. 1209, 221 L. Ed. 2d 274 (2025); *U.S. v. Walls*, 784 F.3d 543, 547, 549 (9th Cir. 2015) ("[T]the congressional findings incorporated into the TVPA clearly demonstrate Congress's intent to enact a criminal statute addressing sex trafficking at all levels of activity[.]  We therefore hold that when Congress used the language "in or affecting interstate or foreign commerce" in the TVPA, it intended to exercise its full powers under the Commerce Clause.  . . . [And,] [c]onsistent with the outer limits of the commerce power defined in [*Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), we hold that any individual instance of conduct regulated by the TVPA need only have a *de minimis* effect on interstate commerce.") (citations omitted); *U.S. v. Adams*, 132 F.4th 259, 263-265 (3d Cir. 2025) (Considering and rejecting many of the same challenges to the constitutionality of 18 U.S.C. § 1591 raised by Kiwitt);  *United States v. Gardner*, No. 8:23-CR-474-CEH-UAM, 2024 WL 3553557, at *2-4 (M.D. Fla. July 26, 2024) (Considering and rejecting many of the same challenges to the

constitutionality of 18 U.S.C. § 1591 raised by Kiwitt, including that, pursuant to *Bond v. United States*, 572 U.S. 844 (2014), the statute should be construed to avoid criminalizing purely local conduct, because there was no clear congressional intent to do so.); *United States v. Renteria*, 84 F.4th 591, 596 (5th Cir. 2023) ("This court is not alone in adopting a broader interpretation of § 1591 despite *Bond*. The Ninth Circuit has rejected arguments like those that Renteria raises, concluding that the interstate commerce element of § 1591 and its legislative history demonstrated Congress's clear intent to reach sex trafficking at all levels. *See United States v. Walls*, 784 F.3d 543, 546–47 (9th Cir. 2015). Because Congress included a clear indication that § 1591 is meant to reach "purely local crimes," Renteria's argument under *Bond* fails.").

In sum, although Defendant maintains that Kasperek was ineffective by failing to provide proper legal advice to him about whether to accept the plea agreement, none of his theories in that regard have merit.

Finally, Defendant also fails to show that Kasperek's conduct at sentencing rendered his plea unknowing or involuntary.   On this point, Defendant maintains that even though he wanted the benefit of the 11(c)(1)(c) plea agreement, Kasperek should have argued at sentencing that Defendant never coerced the victim, that the Court lacked jurisdiction, or that the charge was otherwise invalid.  However, none of those arguments has merit, for reasons already discussed, and an attorney is not ineffective for failing to raise meritless arguments.  Furthermore, any alleged ineffectiveness by Kasperek at sentencing would not change the knowing and voluntary nature of Defendant's guilty plea. *Cf., Wall v. United States*, No. 06-CR-400, 2008 WL 3049948, at *1 (N.D.N.Y. Aug. 1, 2008) ("[C]laims of ineffective representation concerning sentencing generally do not

30

survive the § 2255 waiver, because they relate only to the performance of defendant's attorney with respect to sentencing and do not go to the validity of the plea agreement itself.") (citations and internal quotation marks omitted).

For all the foregoing reasons, the Court finds that Defendant's claims of ineffective assistance of counsel lack merit and therefore did not render his guilty plea un-knowing or involuntary.

> Defendant's Knowing, Voluntary and Unconditional Guilty Plea
> Waived All Non-Jurisdictional Defects, and Any Claims That
> Were Not Waived by the Plea Lack Merit, As Already Explained

As mentioned earlier, a knowing, voluntary and unconditional guilty plea waives all non-jurisdictional defects in a conviction. *U.S. v. Cubangbang*, 2024 WL 725880 at *2. Such non-jurisdictional defects include suppression issues. *See, United States v. Pivnick*, No. 21-1675, 2023 WL 3563030, at *1 (2d Cir. May 19, 2023) ("Absent a conditional plea under Fed. R. Crim. P. 11(a)(2), suppression issues are nonjurisdictional and are waived by a guilty plea.") (citation omitted); *see also, Taylor v. Unger*, No. 1:11-CV-1078 MAT, 2012 WL 5288733, at *4 (W.D.N.Y. Oct. 23, 2012) ("Since Fourth Amendment rights are nonjurisdictional, a knowing and voluntary guilty plea waives claims stemming from an alleged Fourth Amendment violation.") (citation omitted).

Such waived defects also include challenges to the sufficiency of the evidence establishing the elements of the crime to which the defendant pled guilty. *See, e.g., United States v. Rios*, 893 F.2d 479, 481 (2d Cir. 1990) ("Appellant next argues that the district court in sentencing him used a base offense level for a conspiracy involving in excess of five kilograms of cocaine[.] . . . Through this argument Rios attacks the sufficiency of the evidence used by the district court when it imposed his sentence. In pleading guilty, [Rios]

admitted all of the elements comprising the two counts, including conspiracy to distribute in excess of five kilograms, and thereby waived his right to make any other non-jurisdictional challenge. *See Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987).");  *see also, Hayle v. United States*, 815 F.2d at 881 ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction.") (citation omitted).

Such non-jurisdictional defects also include claims of ineffective assistance of counsel that do not relate to the plea itself. *See, e.g., United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) ("Coffin's guilty plea effectively waived all ineffective assistance claims relating to events prior to the guilty plea."); *see also, Valentine v. Lord*, No. 03 CIV. 4834 (PKC), 2006 WL 1997708, at *6 (S.D.N.Y. July 18, 2006) ("[A] petitioner's guilty plea effectively waives all ineffective assistances claims prior to the plea that do not affect the voluntariness of the plea.") (citations omitted).

Such a plea also waives case-related "antecedent constitutional claims" concerning events that occurred prior to the entry of the guilty plea, or constitutional claims that contradict the terms of the indictment or the plea agreement. *See, Class v. United States*, 583 U.S. 174, 179, 138 S. Ct. 798, 803, 200 L. Ed. 2d 37 (2018) ("[A] guilty plea bars appeal of many claims, including some " 'antecedent constitutional violations' " related to events (say, grand jury proceedings) that had occurred prior to the entry of the guilty plea.") (citation omitted); *see also, id*., 583 U.S. at 182 ("A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is

32

entered.") (citation omitted).

An unconditional guilty plea does not, however, waive challenges to the constitutionality of the statue of conviction that "challenge the Government's power to criminalize [the defendant's] (admitted) conduct," and "thereby call into question the Government's power to 'constitutionally prosecute' him." *Class v. United States*, 583 U.S. 174, 181–82, 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018).  Such claims, though, must not contradict the terms of the indictment or the written plea agreement, or require the court to expand the record. *See, id*., 583 U.S. at 181 ("[A] guilty plea does not bar a claim on appeal where on the face of the record the court had no power to enter the conviction or impose the sentence.  However, because the defendants could not prove their claim by relying on those indictments and the existing record and without contradicting those indictments, this Court held that their claims were foreclosed by the admissions inherent in their guilty pleas.") (citations and internal quotation marks omitted); *see, also, United States v. Alarcon Sanchez*, 972 F.3d 156, 167 n. 3 (2d Cir. 2020) ("In *Class v. United States*, —— U.S. ——, 138 S. Ct. 798, 805, 200 L.Ed.2d 37 (2018), the Supreme Court held that a criminal defendant who enters an unconditional guilty plea may still appeal his conviction on the ground that the statute of conviction is unconstitutional. Pursuant to the holding in *Class*, defendants have a right to raise on appeal both as-applied and facial constitutional challenges to the MDLEA.").

Here, the Court continues to find, as it did at the Plea Hearing, that Kiwitt's plea of guilty, pursuant to the 11(c)(1)(C) Plea Agreement, was knowing, voluntary, and intelligent.  The finding is clearly supported by the transcript of the Plea Hearing and by the Court's observations of Defendant.  Consequently, the plea waived all claims except

33

jurisdictional claims and constitutional claims calling into question the Government's power to constitutionally prosecute him.

For example, to the extent Defendant contends that his constitutional rights, such as his Fourth Amendment rights, were violated by Toscano's alleged misconduct, such alleged violations occurred prior to the plea, and any challenges to Defendant's conviction arising therefrom are waived. *See, United States v. Pivnick*, No. 21-1675, 2023 WL 3563030, at *1 (2d Cir. May 19, 2023) ("Absent a conditional plea under Fed. R. Crim. P. 11(a)(2), suppression issues are nonjurisdictional and are waived by a guilty plea. *United States v. Garcia*, 339 F.3d 116, 118 (2d Cir. 2003).").

Defendant's "substantive due process" violation claim similarly fails. In this regard, Defendant asserts that his substantive due process rights were violated when Toscano engaged in outrageous conduct by submitting false statements to the Court. However, this is another instance of an alleged case-related "antecedent constitutional claim" that was waived by Defendant's voluntary and knowing guilty plea. *Tollett v. Henderson*, 411 U.S. at 267. Besides that, the factual premise of the claim is that Toscano primarily lied about Defendant having sex trafficked S.B. by force or coercion, and Defendant later admitted to the Court under oath that he did just that.

Likewise, Defendant's purported double jeopardy claim is waived. Defendant contends that he was prosecuted first by the State of New York, and then by the United States, which violated double jeopardy, as an exception to the dual sovereignty rule, since Toscano "was the architect" of both prosecutions and used the state prosecution as a "tool" to move the prosecution to federal court.[21] However, this is a case-related

---

[21] *See, e.g., United States v. Blanding*, No. 23-7204, 2024 WL 4403154, at *2 (2d Cir. Oct. 4, 2024) ("[A]s a general matter, under the dual-sovereignty doctrine, the Double Jeopardy Clause is not violated by

"antecedent constitutional claim" that was waived by Defendant's knowing and voluntary guilty plea.[22]    Additionally, the claim also fails since there were not two actual prosecutions, but, rather, there was an initial investigation by the Monroe County Sheriff's Office that resulted in his federal prosecution. *See*, ECF No. 54-6 (Investigative report by the Monroe County Sheriff's Office).  Defendant has not shown that jeopardy attached in the alleged state action. *See, United States v. Faison*, 555 F. App'x 60, 63 (2d Cir. 2014) ("[J]eopardy never attached in Faison's state case.  The Double Jeopardy Clause "does not come into play until a proceeding begins before a trier" of fact. *Serfass v. United States*, 420 U.S. 377, 391, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).").

Furthermore, to the extent Defendant's motion raises jurisdictional claims, or constitutional claims calling into question the Government's power to constitutionally prosecute him, that were not waived by his guilty plea, the Court has already discussed them in connection with Defendant's ineffective assistance claims and found that they lack merit.  To the extent Defendant has raised any other such claims which the Court has not expressly discussed, the Court similarly finds that they lack merit.

---

successive state and federal prosecutions for the same conduct. *See United States v. Aboumoussallem*, 726 F.2d 906, 909–10 (2d Cir. 1984). However, "[a] narrow exception to the dual sovereignty doctrine, carved out in *Bartkus v. Illinois*, [359 U.S. 121 (1959)], bars a second prosecution where one prosecuting sovereign can be said to be acting as a tool of the other, or where the second prosecution amounts to a sham and a cover for the first." Id. at 910 (internal quotation marks and citation omitted).").

   *See, e.g., Rosa v. Comm'r of Correction*, No. 3:24-CV-753 (SVN), 2025 WL 51407, at *2 (D. Conn. Jan 8, 2025) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.") (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

## CONCLUSION

Defendant Kiwittt's Section 2255 motion (ECF No. 107, which supersedes ECF Nos. 86 and 105) is denied. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk is directed to close the action.

So Ordered.

Dated: Rochester, New York
    July 15, 2026

ENTER:

CHARLES J. SIRAGUSA
United States District Judge